IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL OSCAR ALTMANN,           :
                 Petitioner,   :      1:17-cv-0047
                                :
        v.                      :
                                :      Hon. John E. Jones III
SUPT. LAWRENCE P. MAHALLY,     :
*et al.*,                       :
                 Respondents.   :

## MEMORANDUM

### November 16, 2018

Petitioner Paul Oscar Altmann ("Petitioner" or "Altmann"), a state inmate currently confined at the State Correctional Institution at Dallas ("SCI-Dallas"), Pennsylvania, files the instant petition (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Altmann subsequently supplemented the petition. (Doc. 20). to the petition He is challenging the Aggregate Judgment of Sentence of 60 to 120 months' imprisonment entered on April 12, 2012, in Court of Common Pleas of Wayne County criminal case number CP-64-CR-419-2011, following his convictions for aggravated assault – serious bodily injury, aggravated assault – deadly weapon, and simple assault – bodily injury, in violation of 18 PA.C.S.A. §§ 2702(a)(a), 2702(a)(4), and 2701(a)(2), respectively. (Doc. 1; Doc. 15-2, p. 2).

---

[1] The petition bears the name "Paul Oscar Altman." (Doc. 1). It appears from the state court documents that the proper spelling of his name is "Altmann."

Altmann seeks relief on the ground that the failure of the trial court to conduct a legally sufficient colloquy of his waiver of his right to counsel rendered his trial and judgment of sentence unconstitutional.  (Doc. 1, p. 5; Doc. 20, p. 10). The petition is presently ripe for disposition.  For the reasons set forth below, the Court will deny the petition.

## I.    STATE COURT BACKGROUND

The Superior Court of Pennsylvania set forth the facts relevant to the commission of the crimes and charges lodged against Altmann:

> On August 12, 2011, [Altmann] and Andrew Hawkins (Victim) got into a fight near the Newfoundland Hotel in Wayne County, Pennsylvania.  The fight began when [Altmann] and his friend left the bar and confronted Victim, who was returning to the bar from his car. Although a number of Victim's acquaintances who left the bar to locate Victim attempted several times to break up the fight, the altercation did not conclude until [Altmann] pulled a knife and sliced Victim's face twice, requiring scores of stitches and resulting in permanent scarring and nerve damage.
>
> On November 1, 2011, [Altmann] was charged with the above-listed crimes [aggravated assault – serious bodily injury, aggravated assault – deadly weapon, and simple assault –bodily injury, in violation of 18 PA.C.S.A. §§ 2702(a)(a), 2702(a)(4), and 2701(a)(2), respectively], as well as two counts of criminal conspiracy.

(Doc. 15-2, pp. 2, 3).  Throughout his pretrial proceedings, Altmann consistently indicated a willingness to proceed *pro se*.  (Doc. 29-1, pp. 2, 3).  Immediately prior

to proceeding to trial, the trial court revisited the issue of waiver of counsel and

conducted the following colloquy:

> THE COURT: What I want from the Commonwealth is I want the District Attorney who is trying the Altmann case.

> MR. BOMPADRE: Yes, Your Honor.

> THE COURT: What I would like to do, I see Mr. Altmann seated here. I think it would be wise if we did another colloquy on Waiver of Counsel here this morning.

> MR. BOMPADRE: Yes, Your Honor.

> THE COURT: So I want to give you a heads up on that. Mr. Altmann, come on forward, sir. Mr. Altmann, good morning to you, sir.

> DEFENDANT: Good morning, Judge Hamill.

> THE COURT: Have a seat, Mr. Altmann. Thank you. Mr. Altmann you are here in the matter of Commonwealth versus yourself at Number 419 - 2011 Criminal. You and I have met several times during the course of this case and I think at each time I encouraged you as forcefully as I could to secure the services of an attorney, and if you couldn't afford an attorney that the Court would appoint one to represent you and you've chosen to continue to represent yourself. Is that correct, sir?

> DEFENDANT: Yes, sir.

> THE COURT: All right. I'd also like to go through one more time the rights you have to be sure that I've done all I can to make it clear to you the risks that you're undertaking by proceeding without an attorney, and then if you still decide to proceed without an attorney that's your decision, sir, and I respect that. First, do you understand

that you have the right to be represented by counsel and your right to have free counsel appointed if you are indigent?

DEFENDANT: Yes, sir.

THE COURT: All right. Now I have here[,] [a]nd I'll ask the Commonwealth to fill this in if they think I'm short on any explanation. But you're charged with five counts. The first charge that you have before you is a felony one, <u>Aggravated Assault Serious Bodily Injury</u>. That charges that you were [sic] attempted to cause serious bodily injury to Andrew Hawkins or did cause such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. Specifically, that you repeatedly slashed the victim's face with a knife, you punched him and kicked him, and you caused severe injuries to his face in violation of 2702 (a) (1) of the Pennsylvania Crime Code. The penalty for that is a maximum 20 years in prison and a $25,000. 00 fine.

Do you understand what you're charged with on that, sir?

DEFENDANT: Yes, sir –

THE COURT: And what the potential penalty is?

DEFENDANT: Yes, sir.

THE COURT: All right. Thank you.

Now as to Count 2, that's another <u>Aggravated Assault </u>charge, another felony of the first degree. Now this it's charging you under § 903(a)(1) of the Pennsylvania Crimes Code, it's saying that you did with the intent to promote or facilitate the crime of aggravated assault, serious bodily injury, conspire and agree with Francis Michael Fitzpatrick that they or one of you would engage in conduct constituting such crime or crimes and you did, in furtherance thereof, commit the overt act of punching, kicking Andrew Hawkins and repeatedly slashing his face with a knife causing severe damage in violation of 903(a)(1) of the Pennsylvania Crime Code.

Do you understand what that is charging you with, sir?

DEFENDANT: Yes, sir.

THE COURT: And do you understand that you face a potential penalty of 20 years and a $25,000. 00 fine, sir.

DEFENDANT: Yes, sir.

THE COURT: A third charge of <u>Aggravated Assault</u> under §2702 (a) (4) , not (a) (1) , but (a) (4) of the Pennsylvania Crimes Code. That's a felony in the second degree. In that instance the Commonwealth is charging that you attempted to cause or intentionally knowingly or recklessly caused bodily injury to Andrew Hawkins with a deadly weapon. Specifically, that you slashed his face with a knife, punched and kicked him causing him severe injuries to his face in violation of 2702 (a).

Do you understand the elements of that offense, sir?

DEFENDANT: Yes, sir.

THE COURT: And do you understand that the potential penalty of that is 10 years and a $25,000.00 fine.

DEFENDANT: Yes, sir.

THE COURT: Thank you. Now, Mr. Altmann, Count 4 charges you again with <u>Aggravated Assault</u>, this time a felony of the second degree. This goes back to §903 (a) which is the conspiracy section. It goes back and charges you with the intent of promoting or facilitating the crime of aggravated assault that you conspired and agreed with Francis Michael Fitzpatrick that they or one of more of them would engage in conduct constituting the crime or crimes of aggravated assault. And in furtherance of that one or more of you did commit the overt act of punching, kicking Andrew Hawkins and repeatedly slashing his face with a knife that that caused severe damage in violation of 903(a)(1).

Do you understand the elements of that offense, sir?

DEFENDANT: Yes, sir.

THE COURT: And do you understand the potential penalty is 10 years and a $25,000.00 fine.

DEFENDANT: Yes, sir.

THE COURT: And as to the last count, Count 5, <u>Simple Assault, Bodily Injury with a Deadly Weapon</u>. You're charged with, under 2701(a)(2) of the Crimes Code, that you negligently caused bodily injury to Andrew Hawkins with a deadly weapon, specifically a knife, and that you did repeatedly slash the victim's face with a knife, you punched and kicked him causing severe injuries to his face in violation to 2701(a)(2).
        Do you understand the elements of that offense, sir?

DEFENDANT: Yes, sir.

THE COURT: And do you understand the potential penalty for that is 5 years and a $10,000.00 fine?

DEFENDANT: Yes, sir.

THE COURT: And do you understand that all these terms could be added together and –

DEFENDANT: Yes, air –

THE COURT: And we're talking 15, 25, 45, 65years? Do you understand that, sir?

DEFENDANT: Yes, sir.

THE COURT: And we' re talking 50, 75, 100, $110,000. 00 fine. Do you understand that, sir?

DEFENDANT: Yes, sir.

THE COURT: All right.

Now, Commonwealth, is there anything else that you want to explain about the elements or the potential consequences?

MR. BOMPADRE: There' s just one correction, Your Honor, and I just caught it, I apologize; just a typographical area [sic]. The co-conspirator's name is Francis Michael Fitzgerald, not Fitzpatrick, so that's a typographical error.

THE COURT: Okay, do you understand that, Mr. Altmann?

DEFENDANT: Yes, I understand. I'll object to it because if that's an amendment the amendment should be made prior to formal arraignment.

THE COURT: All right. Okay. We'll come back and take care of that.

DEFENDANT: Yes, sir.

THE COURT: All right. All right, now I have some other matters I need to cover with you. Do you understand that if you waive the right to counsel you'll still be bound by all the normal rules of procedure, and that counsel would have been familiar with those rules?

DEFENDANT: Yes. They have been familiar with those rules, those rules are not –

THE COURT: Okay. But do you understand that they're generally –

DEFENDANT: Yes, sir –

THE COURT: Educated in those rules.

DEFENDANT: Yes, sir.

THE COURT: All right. Thank you. Do you understand that there are possible defenses to these charges which counsel might be aware of

and if these defenses are not raised at a trial they may be lost permanently? Do you understand that, sir?

DEFENDANT: Yes, sir.

THE COURT: And do you understand that in addition to defenses, you have many rights that if not timely asserted they may be lost permanently and that if errors occur and are timely objected to or otherwise timely raised by the defendant the objection to these errors may be lost permanently. Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: All right. Thank you.
Commonwealth, do you have any other matters that you want to put on the record concerning Mr. Altmann's waiver of his right to counsel?

MR. BOMPADRE: No, Your Honor.

THE COURT: All right. Mr. Altmann, having been advised of all those matters for, you know, how many times, two, three times as we've gone through this process –

DEFENDANT: Two or three, yes; it's the third time I believe.

THE COURT: You still want to proceed representing yourself, sir?

DEFENDANT: Yes, sir.

THE COURT: All right. Thank you.

(Doc. 29-1, pp. 2-9). Altmann proceeded to trial *pro se*, with appointed stand-by counsel present. (Doc. 15-2, p. 3). "Upon [Altmann's] motion, the trial court dismissed the conspiracy charges at the close of the Commonwealth's case. On

January 19, 2012, the jury found [him] guilty of the remaining charges, and [he] was sentenced as indicated above on April 12, 2012. [Altmann], through counsel, filed timely post-sentence motions, which were denied by order of December 4, 2012. [footnote omitted]. [Altmann] filed a timely notice of appeal and both [Altmann] and the trial court complied with Pa.R.A.P. 1925." (*Id.*)

In his direct appeal, Altmann presented the issue of "[w]hether the [t]rial [c]ourt erred in allowing [Altmann] to proceed to trial in a *pro se* capacity and in otherwise failing to conduct a legally sufficient colloquy, pursuant to Pa.R.Crim.P. 121, with [Altmann] such that [Altmann] did not knowingly, understandingly, voluntarily and intelligently waive his right to counsel under the United States and Pennsylvania Constitutions, thereby warranting a new trial?"[2] (*Id.* at pp. 3, 4).

The Superior Court concluded that "[b]ecause the record demonstrates that [Altmann] clearly and unequivocally offered a voluntary knowing and intelligent waiver of his right to counsel" no relief was warranted. (*Id.* at 8). Altmann filed a timely petition for allowance of appeal to the Supreme Court of Pennsylvania. (Doc. 15-3, p. 2). The Supreme Court denied the petition on April 16, 2014. (*Id.*)

Thereafter, Altmann pursued post-conviction collateral relief. On January 9, 2017, he timely filed the instant petition for writ of habeas corpus pursuant to 28

---

[2] Altmann complained of two other matters on appeal, neither of which is relevant to the issue he raises in the matter *sub judice*. (Doc. 15-2).

U.S.C. § 2254.  (Doc. 1).  He supplemented the petition on August 4, 2017.  (Doc.

20).

## II.    <u>**DISCUSSION**</u>

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper

mechanism for a prisoner to challenge the "fact or duration" of his confinement.

*Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  Petitioner's case is governed

by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132,

110 Stat. 1214, April 24, 1996 ("AEDPA").  Section 2254 sets limits on the power

of a federal court to grant an application for a writ of habeas corpus on behalf of a

state prisoner.  *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*,

743 F.3d 402, 406 (3d Cir. 2014).  A federal court may consider a habeas petition

filed by a state prisoner only "on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  28

U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district
> court shall entertain an application for a writ of habeas corpus in
> behalf of a person in custody pursuant to the judgment of a State court
> only on the ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.
>                                               ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

A state-court decision is "contrary to" clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. *Renico v. Lett*, 559 U.S. 766, 773 (2010). "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Importantly, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and

highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (internal quotation marks and citation omitted). The burden is on Altmann to prove entitlement to the writ. *Id.*

Altmann presents for our review the issue of "whether the trial court failed to conduct a legally sufficient [waiver of counsel] colloquy (*Pa.R.Crim.P. Rule 121*) and otherwise failed to determine whether [he] knowingly, understandingly, voluntarily and intelligently waived his *6ᵗʰ Amendment* rights to counsel under the United States Constitution and under Article I, Section 9, of the Pennsylvania Constitution," (Doc. 2, pp. 1, 2) (emphasis in original). He argues that state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Specifically, he argues that the state court's decision is contrary to the directive in *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948), that a judge can make certain that a waiver of counsel is "understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is rendered." (Doc. 2, p. 8). He contends that "[a] review of the actual 10-minute colloquy discloses that the trial court, indeed, covered the six areas required by its Rule 121. However, this discussion at best, was covered in a *perfunctory* fashion." (*Id.* at 11) (emphasis in original).

In support he cites to his appellate brief in which appellate counsel examined "at least five (5) specific areas of Petitioner's pro se performance at trial which demonstrated that he 'was ill-prepared to forego representation by counsel and represent himself, ' " and raises other issues which appellate counsel "apparently overlooked" which are "noteworthy of his complete lack of understanding of the rules of criminal procedure." (*Id.* at pp. 9, 13-15, 17). He argues that "[i]ssues of this nature are not just a manifestation of 'the poor job of lawyering' the Superior Court simplistically alluded to, but rather it constituted evidence of incompetence and a lack of understanding and appreciation on the part of the petitioner of what the waiver process was all about." (*Id.* at 15).[3]

The Sixth Amendment guarantees an accused the right to assistance of counsel for his defense. U.S. Const. Amend. VI. A person accused of a crime, however, may choose to forgo representation. *Faretta v. California*, 422 U.S. 806, 821, 835 (1975) (holding that the right to self-representation is guaranteed by the

_____

[3] In further support of his position that the trial court failed to ascertain his mental disability and competency to waive counsel, he attaches a September 6, 2006 "Inmate Mental Health Evaluation" indicating that "[a]rrangements should be made for Mr. Altmann to see the psychiatrist," and a May 18, 2017 inmate evaluation wherein it is stated that "[h]e is a closed minded thinker who does not accept any information that confronts his criminality or his drinking… [b]ased on these maladaptive criminal thinking errors and a refusal to learn from past mistake[s] it is highly unlikely that anything will change in this man's life regarding negative consequences including future incarcerations." (Doc. 20, ¶¶ 24-26; Doc. 20-1, pp. 27, 28). Neither of these documents was part of the state court record and, as such, are not appropriately considered in our disposition of the issue of competency.

Sixth Amendment to the United States Constitution when a valid waiver is made).

The *Faretta* Court stated:

> It is undeniable that in most criminal prosecutions defendants could
> better defend with counsel's guidance than by their own unskilled
> efforts. But where the defendant will not voluntarily accept
> representation by counsel, the potential advantage of a lawyer's
> training and experience can be realized, if at all, only imperfectly. To
> force a lawyer on a defendant can only lead him to believe that the
> law contrives against him. Moreover, it is not inconceivable that in
> some rare instances, the defendant might in fact present his case more
> effectively by conducting his own defense. Personal liberties are not
> rooted in the law of averages. The right to defend is personal. The
> defendant, and not his lawyer or the State, will bear the personal
> consequences of a conviction. It is the defendant, therefore, who must
> be free personally to decide whether in his particular case counsel is to
> his advantage. And although he may conduct his own defense
> ultimately to his own detriment, his choice must be honored out of
> "that respect for the individual which is the lifeblood of the law."
> *Illinois v. Allen*, 397 U.S. 337, 350—351, 90 S.Ct. 1057, 1064, 25
> L.Ed.2d 353 (Brennan, J., concurring).

*Faretta*, 422 U.S. at 834. While the Constitution "does not force a lawyer upon a

defendant," *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942), it

does require that any waiver of the right to counsel be clear and unequivocal and

be knowing, voluntary, and intelligent. *See Faretta, 422 U.S.* at 835; *Johnson v.

Zerbst*, 304 U.S. 458, 464 (1938).

The trial judge has "the serious and weighty responsibility" of determining if

a defendant's right to counsel has been waived, and prohibits forcing a defendant

to trial absent a valid waiver of this Sixth Amendment right. *Johnson*, 304 U.S. at

465.  "The fact that an accused may tell [a judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).  "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is rendered." *Id.*  There is no prescribed formula or script colloquy; the information to be conveyed to the defendant "depend[s], in each case, upon the particular facts and circumstances surrounding that case." *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (quoting *Johnson*, 304 U.S. at 464).  "To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke*, 332 U.S. at 724.

Significantly, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1993) (emphasis in original).  The Supreme further explained:

> In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), we  held that a defendant choosing self-representation must do

so 'competently and intelligently,' *id.*, at 835, 95 S.Ct., at 2541, but we made it clear that the defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel, *id.*, at 836, 95 S.Ct., at 2541, and we emphasized that although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored,' *id.*, at 834, 95 S.Ct., at 2541. Thus, while '[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,' *ibid.*, a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation."

*Id.* at 400. Consideration of the defendant's best interests is wholly irrelevant to an assessment of whether a criminal defendant has rendered a knowing and intelligent waiver of his right to the assistance of counsel or not. *See Faretta*, 422 U.S. at 834. "[A] defendant's request to waive the right to counsel and proceed *pro se* cannot be denied because the court believes that the defendant's choice is ill-advised. Such a choice is almost always ill-advised." *Alongi v. Ricci*, 367 F. App'x. 341, 348 (3d Cir. Feb. 26, 2010).

In reviewing the waiver of counsel colloquy administered to Altmann by the trial court, the Superior Court, on direct appellate review, set forth the following standards of review:

A criminal defendant has a constitutional right, necessarily implied under the Sixth Amendment of the U.S. Constitution, to self-representation at trial. However, before a defendant will be permitted to proceed *pro se*, he or she must knowingly, voluntarily, and intelligently waive the right to counsel. To ensure that a waiver is knowing, voluntary, and intelligent, the

trial court must conduct a "probing colloquy," which is a searching and formal inquiry as to whether the defendant is aware both of the right to counsel and of the significance and consequences of waiving that right. More specifically, the court must determine the following:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of and if these defenses are not raised at trial they may be lost permanently; and

(f) that the defendant understands that in addition to defenses the defendant has many rights that if not timely asserted may be lost permanently and that if errors occur and are not timely objected to or otherwise timely raised by the defendant these errors may be lost permanently.

*Commonwealth v Spotz*,18 A.3d 244, 263 (Pa. 2011) (citations omitted) (quoting Pa.R.Crim.P 121(A)(2)). On review, this Court examines the totality of the circumstances to determine whether the defendant's waiver of counsel was clear and unequivocal. *Commonwealth v Faulk*, 21 A.3d 1196, 1201 (Pa. Super. 2011).

(Doc. 15-2, pp. 4, 5). The Superior Court reviewed the record, which revealed that the trial court "did thoroughly address his right to counsel; the nature and elements of the charges; the penalties he faced for the charges, both individually and aggregated; his duty to comply with procedural rules with which counsel would be familiar; that he may have defenses that could be lost permanently if not raised at trial; and that other rights may be permanently lost of [sic] not properly preserved. *See* N.T. 1/17/2012, at 2-8.]" (*Id.* at p. 5, n. 3). However, the court noted that Altmann did not dispute that the trial court's colloquy covered the six areas required by Rule 121; "rather, he complain[ed] that the trial court did not probe sufficiently [his] understanding of the questions. Specifically, [he] claims that the trial court failed to inquire about his education and comprehension skills, to ask whether he suffered from mental disabilities, and to ascertain his familiarity with the rules of procedure and evidence." The Superior court was not persuaded by the argument:

> The on-the-record colloquy conducted on January 17, 2012 was not the first or only time the trial court discussed the right to counsel with [Altmann]. The transcript reveals that the trial court had interacted with [Altmann] several times before that date, and had gained familiarity with [him].
>
> > THE COURT: … I think it would be wise if we did another colloquy on Waiver of Counsel here this morning. … You and I have met several times during the course of this case and I think

at each time I encouraged you as forcefully as I could to secure the services of an attorney and if you couldn't afford an attorney that the Court would appoint one to represent you and you've chosen to continue to represent yourself. Is that correct, sir?

[Altmann]:     Yes, sir.

THE COURT:  All right I'd also like to go through one more time the rights you have to be sure that I've done all I can to make it clear to you the risks that you're undertaking by proceeding without an attorney....

***

THE COURT:  All right.  [Altmann], having been advised of all those matters for, you know, how many times, two, three times as we've gone through this process-

[Altmann]:     Two or three, yes; it's the third time I believe.

THE COURT:  You still want to proceed representing yourself, sir?

[Altmann]:     Yes, sir.

N.T. 1/ 17/ 2012, at 2-3, 8- 9.  The transcript demonstrates that the trial court provided [Altmann] with all the information necessary for him to make an informed decision and that [he] clearly and unequivocally expressed his desire to represent himself.

Nonetheless [Altmann] argues that based upon his lack of education he was ill prepared to forego representation by counsel and represent himself.  [Altmann's] brief at 24.  In support, [he]cites to several examples of the poor job of lawyering he did at trial.  *Id.* at 24, 27 (noting [Altmann's] poor phrasing of questions; disclosure of his own prior bad acts; failure to object to color photographs of Victim's injuries being admitted and agreement to allow them to be sent back

with the jury; and failure to argue properly regarding jury instructions).

[Altmann's] argument is irrelevant to the inquiry required of the trial court. The question was not whether [Altmann] was able to do a good job defending himself; it was whether [Altmann] understood that he had a right to counsel and wished to waive that right. Our Supreme Court has rejected trial court inquiries into whether self-representation was wise or in the defendant's best interests, holding an evaluation of a criminal defendant's technical legal knowledge and courtroom skill is not relevant to an assessment of his knowing and intelligent exercise of the right to defend himself. *Commonwealth v Starr*, 664 A.2d 1326, 1337 (Pa. 1995). Th[at] approach… represents the kind of paternalistic concern for a criminal defendant expressly rejected in *Faretta v California*, 422 U S 806 (1975). *Id.*

Because the record demonstrates that [Altmann] clearly and unequivocally offered a voluntary, knowing, and intelligent waiver of his right to counsel, his first issue warrants no relief.

(*Id.* at 6–8).

Contrary to Altmann's assertions, the Superior Court's decision wholly comports with, and reasonably applies clearly established federal law as determined by the Supreme Court of the United States. The Superior Court recognized that the information to be conveyed to Altmann in the context of a waiver of counsel colloquy depended upon the particular facts and circumstances surrounding his case. Specifically, it noted that immediately before proceeding to trial, and in advance of conducting the waiver of counsel colloquy, the trial judge reminded Altmann that of several prior meetings and that on each occasion he

encouraged him, as forcefully as he deemed appropriate, to secure counsel or allow the court to appoint counsel. (Doc. 29-1, pp. 2-3). It noted that the trial judge informed him that despite the fact that they had engaged in the waiver of counsel colloquy approximately three times prior, he wanted to go through the process one more time "to be sure that I've done all I can to make it clear to you the risks that you're undertaking by proceeding without an attorney, and then if you still decide to proceed without an attorney that's your decision, sir, and I respect that." (Doc. 29-1, pp. 2-3). It considered whether the trial court conducted a "probing colloquy" that satisfied the requirements that Altmann was aware both of the right to counsel and of the significance and consequences of waiving that right. It noted that the trial judge presented to Altmann the nature and elements of the charges, the penalties he faced for the charges, both individually and aggregated, his duty to comply with procedural rules with which counsel would be familiar, that he may have defenses that could be lost permanently if not raised at trial; and that other rights may be permanently lost if not properly preserved and other facts essential to Altmann's broad understanding of the matter. And, it focused on his competency to waive the right to counsel as opposed to his ability to self-represent when it addressed his argument that the colloquy was invalid because the trial court failed to inquire about his education and comprehension skills, to ask whether he suffered

from mental disabilities, and to ascertain his familiarity with the rules of procedure and evidence.

Because we conclude that the Superior Court's decision concerning the validity of Altmann's waiver of counsel colloquy was not contrary to, and did not involve an unreasonable application of, clearly established Federal law as established by the Supreme Court, the petition will be denied.

## IV.    **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Altmann from appealing the order denying his petition so long as he seeks, and obtains, a

certificate of appealability from the Third Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b)(1).

## V.    <u>CONCLUSION</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order will enter.